Sam Newman et al. [1] v. Commissioner. Newman v. Commissioner
Docket Nos. 30655, 30656, 30657, 30658, and 30659.
United States Tax Court
1951 Tax Ct. Memo LEXIS 39; 10 T.C.M. (CCH) 1107; T.C.M. (RIA) 51339; November 20, 1951
*39 George Surosky, Esq., and William Surosky, Esq., for the petitioners. William G. O'Neill, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding arises out of respondent's determination that deficiencies in income tax are owing for 1945 of $5,277.75 by Sam Newman, $5,524.37 by Moe Newman, $1,984.68 by Joseph Sassower, $4,321.30 by Jacob S. Hausman, and $4,169.61 by Jacob Miller. Certain adjustments are not contested. The sole issue is whether respondent properly taxed to petitioners the income of two business enterprises, of which certain relatives of petitioners are denominated partners. Some of the facts were stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Petitioners are residents of New York State. The return of petitioner Moe Newman was filed with the collector for one of the New York State districts, and the returns of all other petitioners were filed with the collector for the second New York district. At all times material to this proceeding petitioners Sam Newman, Moe Newman, Hausman, and Miller were officers, directors, and majority stockholders of the Ripley Manufacturing *40 Company and its whollyowned subsidiary, 122 Delancey Street Corporation. On November 12, 1943, petitioner Sassower acquired title to property known as 122 Delancey Street in New York City from the Guaranty Trust Company. In the closing agreement the sales price was given as $45,000 and a purchase money mortgage as $25,000. On the same day petitioner Sassower conveyed record title in fee simple, subject to the $25,000 mortgage, to Mina Newman, mother of petitioners Sam and Moe Newman, and to Rebecca Sassower, Pauline J. Hausman, and Anna Miller, wives of petitioners Sassower, Hausman, and Miller, respectively. The funds applied to the purchase price were obtained in October 1943 by Mina Newman from petitioners Moe and Sam Newman, and by Mrs. Sassower, Mrs. Hausman, and Mrs. Miller, each from their respective husbands. None of the petitioners filed gift tax returns for 1943 or any prior year. Mina Newman lives with one of her sons. She owns no real property other than her interest in the above property. An agreement, bearing the date of November 12, 1943, signed by Mina Newman, Mrs. Sassower, Mrs. Hausman, and Mrs. Miller, stated, among other matters, that the parties agreed to engage *41 as partners in the business of dealing in real estate under the name of Double Realty Company; that the capital of the business should be $20,000 contributed in the following amounts: $8,000 by Mina Newman, $4,440 by Mrs. Sassower, and $3,780 each by Mrs. Hausman, and Mrs. Miller; it further provided that the moneys of the business deposited in the Manufacturers Trust Company should be subject to withdrawal only by check signed by Mrs. Hausman or Mrs. Miller, together with either Mrs. Sassower represented by Jacob M. Newman, under a power of attorney, or Mina Newman represented by petitioner Sam Newman, under a power of attorney; and that profits and losses should be shared in proportion to the respective capital contributions. Prior to formation of the above company Mina Newman did not consult with the other women involved. She consulted only her daughter concerning the proposed company. An instrument entitled "Certificate of Partnership," executed on November 12, 1943, by Mina Newman, Mrs. Sassower, Mrs. Hausman, and Mrs. Miller, stating that they were conducting business under the name "Double Realty Company" at 122 Delancey Street, was filed in the office of the County Clerk *42 of New York County. Subsequently the property was leased by an indenture executed in the names of Double Realty Company, as landlord, and 122 Delancey Street Corp., as tenant, which provided, among other matters, that the tenant would use the premises only for the conduct of a clothing business; that the tenant should keep the premises in good order and repair; that on demand the tenant should pay as rent any increase in insurance premiums imposed in consequence of the tenant's occupation; that the tenant should pay as rent the increase in real estate taxes imposed during the period of the lease. Thereafter a lease containing similar terms, except for the amount of rental, bearing the date of March 28, 1945, was executed, providing for an annual rental at the landlord's option either of $12,000 or 5 per cent of annual net sales, and with a term from April 1, 1945, to November 30, 1954, with an option by the lessee to renew for a further term of 10 years. That amount constituted a fair and reasonable rental. The income from the property was reported on partnership returns filed under the name of Double Realty Company. Rents received by Double Realty Company between April 1, 1944, and *43 March 31, 1947, totaled $102,326.89, the rent for the fiscal year ending March 31, 1945, totaling $27,136.82. Disbursements were made for the following purposes: Payments of principal and interest on the mortgage, real estate and water taxes, insurance, legal and accounting fees, personal taxes of the partners, and drawings against the accounts of the partners for stock purposes. On June 21, 1945, purchases of stock of Ripley Manufacturing Company were made with funds withdrawn from their accounts in the following amounts: $11,200 - Mrs. Newman; $6,200 - Mrs. Sassower; $5,275 - Mrs. Hausman; and $5,275 - Mrs. Miller. A deed, bearing the date of May 15, 1944, transferred record title in fee simple, subject to a mortgage of $45,000, of property located at 115-21 Myrtle Avenue, Brooklyn, to Yetta Newman, wife of petitioner Sam Newman, Frieda Newman, wife of petitioner Moe Newman, Mrs. Hausman, and Mrs. Miller. The moneys applied to the purchase price were obtained on May 10, 1944, by the receipt of $2,650 by each of the wives from their respective husbands, petitioners Moe Newman, Sam Newman, Hausman, and Miller. According to the closing agreement covering acquisition of the property, *44 the purchase price was $55,000 and with a purchase money mortgage in the amount of $45,000. An agreement, bearing the date of June 1, 1944, signed by Frieda Newman, Yetta Newman, Mrs. Hausman, and Mrs. Miller, stated, among other matters, that the parties agreed to engage in the business of dealing in real estate under the name of Bridge-Myrt Realty Company; that the capital of the business should be $10,000 contributed in the following amounts: $3,110 each by Frieda and Yetta Newman, and $1,890 each by Mrs. Hausman and Mrs. Miller; that moneys deposited in the Manufacturers Trust Company should be subject to withdrawal only by check signed either by Frieda or Yetta Newman together with either Mrs. Hausman or Mrs. Miller; and that profits and losses should be shared in proportion to the respective capital contributions. An instrument entitled "Certificate of Partnership" signed on June 21, 1944, by Frieda Newman, Yetta Newman, Mrs. Hausman, and Mrs. Miller, stating that they were conducting business in partnership under the name of Bridge-Myrt Realty Company at 115 Myrtle Avenue, was filed in the office of the County Clerk of the County of Kings. A lease of that property, bearing *45 the date of June 1, 1944, executed in the names of Bridge-Myrt Realty Company, and Ripley Manufacturing Corp., as tenant, provided, among other matters, that the landlord leased to the tenant the entire building for a term from June 1, 1944, to May 31, 1947, at an annual rental of $18,000; that the tenant would use the premises for the conduct of a clothing business; that the tenant should keep the premises in good order and repair; that on demand the tenant should pay as rent any increase in insurance premiums imposed as a consequence of the tenant's occupation; that the tenant should pay as rent the increase in real estate taxes imposed during the period of the lease; and that at expiration of the lease, at the option of the tenant the lessor should grant a new lease for a further period upon the same terms. The amount of $18,000 per year constituted a fair and reasonable rental for the premises. The income from the property at 115-21 Myrtle Avenue was reported on partnership returns filed under the name of Bridge-Myrt Realty Company. Rents received by Bridge-Myrt Realty Company between June 1, 1944, and March 31, 1947, totaled $51,000, and disbursements were made for the following *46 purposes: Payments of principal and interest on the mortgage, real estate and water taxes, insurance, general expenses, housing permit expense, legal and accounting fees, personal taxes of Mrs. Hausman and Mrs. Miller, and drawings against the accounts of the partners for stock purchases. On June 21, 1945, purchases of stock of Ripley Manufacturing Company were made with funds withdrawn from their accounts in the following amounts: $3,400 - Yetta Newman; $3,400 - Frieda Newman; $2,050 - Mrs. Hausman; and $2,050 - Mrs. Miller. The partnership return of Double Realty Company for the fiscal year April 1, 1944, to March 31, 1945, reported ordinary net income of $26,297.83, with distributable shares of $10,519.13 to Mina Newman, $5,838.12 to Mrs. Sassower, and $4,970.29 each to Mrs. Hausman and Mrs. Miller. The partnership return of Bridge-Myrt Realty Company for the fiscal year April 1, 1944, to March 31, 1945, reported ordinary net income of $8,539.13 with distributable shares in the amount of $2,655.67 each to Yetta and Frieda Newman, and $1,613.89 and $1,613.90 to Mrs. Hausman and Mrs. Miller, respectively. The individual tax returns of petitioners for 1945 reported adjusted gross *47 income in the following amounts: $25,389 by Sam Newman, $25,389 by Moe Newman, $6,750 by Sassower, $23,725 by Hausman, and $23,725 by Miller. Respondent's notices of deficiency determined, among other matters, that the income of petitioners Sam Newman and Moe Newman should each include 20 per cent or $5,259.57 and $5,259.56, respectively, of the net income of Double Realty Company, and 31.1 per cent or $2,655.67 of the net income of Bridge-Myrt Realty Company; that the income of petitioner Sassower should include 22.2 per cent or $5,838.12 of the net income of Double Realty Company; and that the income of petitioners Hausman and Miller should each include 18.9 per cent or $4,970.29 of the net income of Double Realty Company, and 18.9 per cent or $1,613.89 and $1,613.90, respectively, of the net income of Bridge-Myrt Realty Company. Opinion We think respondent has misconceived the method of dealing with the problem presented even if the present situation conforms to his description of it: "* * * it was obvious to petitioners, controlling the destinies of the firm [a corporation of which some but not all were shareholders], that if they purchased the properties in the names of *48 their wives or mother and arranged for the corporation to immediately enter into leases of the properties, that the rentals would be a deductible expense of the corporation, the corporate net income would thereby be reduced, resulting in lower corporate taxes and less income to be distributed to petitioners, on which they would be taxed." (Respondent's brief). There is no suggestion that the funds to purchase the rented property came from the corporation. Cf. , affirmed (C.A. 5), ; . Its connection with carrying out the program condemned by respondent could hence be only that it was paying an unreasonably large rental in order to secure an unwarranted deduction. It could not be said here as, for example, in the dissenting opinion in , affirmed (C.A. 6), , that the taxpayer "is not entitled, for tax purposes, to deduct rentals for the use of its own property." Assuming that the corporation's rental payments, and hence its deductions, were unreasonably high - a fact which is contradicted by *49 the record - there is a simple and logical remedy. The excessive rental deductions can be denied to the corporation. , affirmed (C.A. 5), . The confusing nature of the position maintained by respondent is indicated by the hypothesis that if petitioners had purchased the property in their own names and rented it to the corporation at a reasonable rental, there would have been nothing unusual about the transaction and in all probability no action would even have been attempted to correct it. Cf. . Yet it is only because the corporation became the tenant of the property and because petitioners, and not the corporation, provided the consideration by which the property was purchased by their relatives that respondent makes the contention which appears in the excerpt previously quoted. There is nothing to suggest that the income from the real property was due in any respect to personal services rendered by any of the petitioners. Cf., e.g., , with , affirmed (C.A. 7), . *50 It appears rather to proceed entirely from property of which petitioners are not and never have been the owners. See . But if to any extent the services which they rendered to the corporation produce any part of the income attributed to the real property, it must be the consequence of an excessive rental paid by the corporation. If so, as we have said, it is not in such a proceeding as this that the issue should be litigated. Decisions will be entered for the petitioners. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Moe Newman; Joseph Sassower; Jacob S. Hausman; Jacob Miller.↩